IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY L. HADDIX, JR., | No. C 06-6620 WHA (PR) |
| Petitioner, | **DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| C. SCAVETTA, Acting Warden, | |
| Respondent. | |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below the petition is **DENIED**.

**STATEMENT**

A Del Norte County jury convicted petitioner of attempted murder. It also found to be true the prosecution's allegations that he personally used a weapon and that he inflicted great bodily injury. The court found prior felony and prior prison term allegations to be true. Petitioner was sentenced to state prison for a total of thirty-two years and four months, including seven years and four months for first degree burglary, assault by a prisoner and possession of a weapon in a separate case. That case is not involved in this action.

///

The California Court of Appeal summarized the testimony at trial as follows:

*Prosecution Case*

The charged crime took place at Pelican Bay State Prison, where both defendant and the victim, John Hancock, were inmates.

Hancock is one of the founders of a Sacramento street gang known as the "Sacromaniacs." Although Hancock was once a high-ranking member of the Sacromaniacs, he claimed to have "debriefed," [Footnote 1: Debriefing means disclosing one's gang affiliation and providing information about the gang to law enforcement, with the intent of leaving the gang.] and was considered to have left the gang, in 1997 and 1999. In 1999 he was sent to Pelican Bay on a parole violation. Upon his arrival at Pelican Bay, Hancock feared he was "in the hat" with members of the Sacromaniacs, meaning they had targeted him to be hurt or killed. He asked prison officials for protection, but was turned down because officials did not believe other inmates knew Hancock had debriefed. For his own safety, defendant pretended to other Sacromaniacs members that he was still active in the gang.

Inmate Robert ("Gensu") Whalley made weapons in Pelican Bay. In July or August of 1999 he learned that a group of inmates were planning a "hit" on Hancock. Whalley manufactured two knives for the hit and had one delivered to the defendant. Whalley estimated that half of the general population inmates out on the yard knew Hancock was going to be hit.

In late September 1999 defendant was placed in administrative segregation after prison officials learned he was "in the hat" with the Aryan Brotherhood prison gang. On October 6, 1999, he persuaded prison officials to release him to the general population. He assured officials that he would not be in danger if he were released back into the general population and was "very adamant" about wanting out of administrative segregation.

On October 17, 1999, Hancock was in the general population yard with several members of the Sacromaniacs. Defendant was not then authorized to be on the yard, but someone arranged for him to receive a pass to go to chapel, which enabled him to cross through the yard on his way. Defendant and inmate Kevin Iloff approached Hancock from behind. Defendant announced, "your time has come, Hoss," and defendant and Iloff attacked Hancock with knives, pursuing and continuing to stab him as he tried to escape. After he was subdued by guards, defendant exclaimed "I wish I would have killed him" and "what's another 18 months in SHU."

Hancock suffered numerous stab wounds. Two pierced his lung and a third damaged his spleen. He suffered a knife wound to his head that exposed his skull, and another wound that went entirely through his upper arm and armpit. The largest wound was a gash to Hancock's abdomen. Hancock spent several hours in surgery. The surgeon opined the wounds were life-threatening.

Defendant thereafter boasted to another inmate that he had "gutted" Hancock and tried to kill him, but "the guy just wouldn't die." He wrote to Whalley that "[i]f you pull a weapon on somebody, you're there to kill them." He bragged to a correctional officer that he stabbed Hancock and had gotten away with it. He handed the officer some pictures, and stated "[l]ook what we did to that fat fucker," "[h]is guts were sticking out," and we "cut him up pretty good."

    Surveillance cameras captured the assault.  After watching the videotapes, Hancock testified that defendant inflicted the wounds to his head, upper arm and armpit, and abdomen, and that the defendant inflicted more wounds than Iloff.

    Whalley testified that he and inmate Robert Cole were protecting defendant from the Aryan Brotherhood.  Defendant was chosen by Cole to stab Hancock so that he could get off the main yard and back into administrative segregation.

    Several witnesses testified about the options available to inmates targeted for violence.  Sergeant Diane Hemmingsen opined that if an inmate is "in the hat," prison officials will relocate him from the yard to protective custody.  She explained, "there's a lot of options.  You just have to tell somebody."  Correctional Officer Jim Dagenais testified that the Department of Corrections goes out of its way to protect inmates who are in danger from other inmates.

*Defense Case*

    Defendant presented a necessity defense.  He testified that he learned in June 1999 that he was "in the hat" with the Aryan Brotherhood.  In September 1999, prison officials transferred him to administrative segregation for his own protection.  Around October 6, 1999, he was returned to the general population.  He testified that he resisted the transfer, although he admitted telling the prison committee he wasn't afraid to go back to the general population because he had friends there looking out for him.  He also admitted declining a transfer to another prison because he preferred to remain at Pelican Bay with his half brother.

    On October 16, 1999, a correctional officer gave defendant a pass to the chapel and told him the chaplain wanted to see him.  Defendant testified that he did not request the pass and did not know its purpose.  Someone else had signed his name on the form.  The next day defendant walked through the general population yard on his way to the chapel.  He said he saw and greeted Hancock, who handed him a knife.  Hancock told defendant to "whack" an inmate named Kidd.  Defendant testified it was common to have a second "shooter" on the yard whose job was to make sure the first shooter performed the hit, and that he knew the second shooter would kill him if he failed to carry out the hit.  He believed Iloff could have been the second "shooter."

    Defendant did not want to stab Kidd, who "[didn't] have it coming."  He believed the only way to avoid being stabbed himself was to attack Hancock.  Defendant felt his life was in danger.  The guards were standing over 75 yards away and he thought he would be stabbed if he tried to approach them for help.

    Defendant denied bragging about the stabbing.  However, he admitted writing to his half-brother that "I got charged with attempted murder.  But sometimes we do things for the ones we love most and take the punishment that comes with it."

    Robert Cole testified that he saw Hancock hand something to defendant before the assault, although he could not tell what it was.  Hancock was passing something out to other people as well.  Inmate Richard Madsen testified that Hancock told him someone was supposed to be hit on the yard that day but that the shooter had "fucked up" and hit Hancock instead.

(Exh. 6 at 1-4).

3

**DISCUSSION**

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

4

1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) his due process rights were violated when the trial court gave a jury instruction that said that he had the burden of proving his necessity defense by a preponderance of the evidence; (2) the trial court lessened the prosecution's burden of proving him guilty of personally causing great bodily injury by giving the group-beating instruction, CALJIC 17.20, which permitted him to be convicted if he personally inflicted injury and knew or should have known that other persons would also do so, and knew or should have known that the cumulative effect would be that the bodily injury would be great.

### 1.    Burden of Proof on Necessity Defense

Petitioner's defense was "necessity;" he contended that he was forced to stab Hancock to avoid being killed himself. Under California state law the necessity defense is an affirmative defense that the defendant must establish by a preponderance of the evidence (Exh. 6 at 5). The California Court of Appeal thus rejected petitioner's contention that the jury instruction requiring him to prove necessity by a preponderance of the evidence, rather than just raising a reasonable doubt of his guilt, was erroneous (*id.* at 6-7).

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute

5

the crime with which he or she is charged. *In re Winship*, 397 U.S. 358, 364 (1970). Petitioner contends that requiring him to prove necessity, and to do so by a preponderance, violated this right. There is, however, no violation of due process if the instruction does not require the defendant to negate an element of a crime. *United States v. Leal-Cruz*, 431 F.3d 667, 670-72 (9th Cir. 2005); *see also Martin v. Ohio*, 480 U.S. 228, 233 (1987) (jury charge that placed on defendant burden of proving self-defense by a preponderance did not violate due process where jury was instructed that it must find all elements of crime beyond a reasonable doubt).

The California Court of Appeal, in a state law ruling that is binding here, *see Hicks v. Feiock*, 485 U.S. 624, 629 (1988), held that the necessity defense does not negate any element of the crime (Exh. 6 at 6). There thus could have been no violation of due process. *See Leal-Cruz*, 431 F.3d at 671 ("the Due Process Clause forbids shifting the burden of proof to the defendant on an issue only where establishing the defense would necessarily negate an element that the prosecution must prove beyond a reasonable doubt.").

### 2. Group Beating Instruction, CALJIC 17.20

Petitioner also contends that a jury instruction on group beatings, CALJIC 17.20, lessened the prosecution's burden of proving him guilty of personally causing great bodily injury. The instruction included this language:

> When a person participates in a group beating and it is not possible to determine which assailant inflicted a particular injury, he or she may be found to have personally inflicted great bodily injury upon the victim if 1) the application of unlawful physical force upon the victim was of such a nature that, by itself, it could have caused the great bodily injury suffered by the victim; or 2) that at the time the defendant personally applied unlawful physical force to the victim, the defendant knew that other persons, as part of the same incident, had applied, were applying or would apply unlawful physical force upon the victim and the defendant then knew, or reasonably should have known, that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim.

(Exh. 6 at 8). The California Court of Appeal held that the instruction does not violate California law (Exh. 6 at 10-11). Subsequent to the court of appeal decision here, the California Supreme Court agreed that the instruction is proper, holding among other things that the words "personally inflicted" include the circumstance of a group beating as described in section two of

the paragraph quoted above. *See People v. Modiri*, 39 Cal. 4th 481, 493-94 (2006). As discussed above, these holdings as to California law are binding here. *See Hicks*, 485 U.S. at 629.

The Ninth Circuit has held that the "state is ordinarily free within broad limits to define the elements of a particular offense." *Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir.1998). Thus, the Court of Appeal's determination that the definition of "personally causing" great bodily injury includes causing such injuries concurrently with others in a group beating, is not open to challenge on habeas review. *Id.* This claim is without merit. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for violations of state law or for alleged error in the interpretation or application of state law).

## CONCLUSION

Because petitioner's constitutional rights were not violated, the state appellate courts' rejections of these claims were not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority. The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October  1 , 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\HADDIX620.RUL.wpd

7